## Burrows *against* Stoddard.

*October 21.*

An officer having attached goods, delivered them to *A.*, who gave his receipt for them; four days afterwards, *B.* signed the same receipt, the goods having been, in the mean time, attached, and taken away, by *C.*; *A.* brought an action against *C.* for taking the goods; and wishing to offer *B.* as a witness, procured his name to be cut from the receipt, with the consent of *B.* and the officer. Held, that the receipt was not thereby destroyed.

The receipter of goods attached, having put them into the custody of another to be taken care of, has the constructive possession, and may maintain trespass for taking them out of such custody.

*A.* attached certain cattle as the property of *B.* his debtor. The officer drove them from the farm occupied by *B.*, where they were, when attached, into the street, and delivered them to *A.*, taking his receipt for them. *A.* then delivered them to a minor son of *B.* living with his father, to keep and take care of them, who immediately put them back upon the farm occupied by *B.*, visibly in the same situation in which they were, when attached. Held, that these facts, in relation to a subsequent attaching creditor of *B.*, constituted a badge of fraud, and were conclusive evidence of it, unless explained by the most satisfactory reasons.

The bare removal of property attached, which is immediately returned to the debtor, is not sufficient to repel the presumption of fraud arising from the debtor's possession.

THIS was an action of trespass, for taking and carrying away certain cattle from the plaintiff's possession. The cause was tried at *New-London*, *January* term, 1819, before *Swift.* Ch. J. and *Brainard* and *Chapman.* Js.

New-London,
October,
1819.

Burrows
v.
Stoddard.

The plaintiff, being a creditor of *William Hempstead*, who was insolvent, on the 25th of *December*, 1817, caused the property described in the declaration to be attached, by a writ in his, the plaintiff's name, against said *Hempstead*. The property, when attached, was on a farm in the possession of *Hempstead* and one *Hinckley*. *Haley*, the officer, who served the attachment, drove the cattle into the street, and delivered them to the plaintiff, who gave his receipt to *Haley* for them. The plaintiff then delivered them to *John Hempstead*, a son of *William*, under the age of twenty-one years, living with his father, as a member of his family, to keep and take care of as a servant of the plaintiff; and they were immediately put back upon the farm, visibly in the same situation in which they were, when they were attached. On the 27th of *December*, the defendant, being a creditor of *William Hempstead*, caused the same cattle to be attached, on the farm, and had them taken away. This was done with knowledge of all the facts regarding the plaintiff's attachment.

Four days after the plaintiff executed his receipt to *Haley*, it was signed by *Hinckley*; but before the trial, *Hinckley's* name had been cut off, by the consent and agreement of *Haley*, of the plaintiff, and of *Hinckley*, for the purpose of qualifying the latter to be a witness. Under these circumstances, the defendant contended, that the receipt was inadmissible in evidence, and objected to its going to the jury; but the court admitted it.

The defendant prayed the court to instruct the jury, that if they found no other change of possession than that above stated, and that the property remained visibly in the same condition, at the time of the defendant's attachment, as it was in, at the time of, and previous to, the plaintiff's attachment, the plaintiff could not recover. But the court instructed the jury, that to secure property attached from a liability to be attached, and holden, by a subsequent attaching creditor, it must be removed from the possession of the debtor; and if the jury should find, that the property in question had been removed from the possession of the debtor, they must find for the plaintiff; otherwise, they must find for the defendant.

The defendant also prayed the court to instruct the jury, that if they should find, that the property was delivered to *John Hempstead* to keep for the plaintiff, the plaintiff had not

New-London,
October,
1819.

Burrows
v.
Stoddard.

such possession as would entitle him to maintain this action. But the court refused so to instruct the jury.

The plaintiff having obtained a verdict, the defendant moved for a new trial, on the ground of the admission of improper evidence, and of a misdirection to the jury.

*Goddard* and *Hill*, in support of the motion, contended, 1. That the receipt, being, at the time it was offered in evidence, an *altered* instrument, was void, and therefore inadmissible. *Master* & al. v. *Miller*, 4 *Term Rep.* 320. S. C. 2 *Hen. Bla.* 140. After the alteration of a contract, though by the consent of all parties, it can never be resuscitated, but on the footing of a new contract. *French* v. *Patton*, 9 *East* 35.

2. That the plaintiff could not maintain this action, because he was not the owner of the property, nor in the actual possession of it. The possession of the plaintiff is essential to maintain trespass. Where he has the absolute ownership of the property, it may be constructively in his possession, though in the custody of another; but where he has only a qualified property, he can have no constructive possession. Here, it will be conceded, that the plaintiff, as attaching creditor, acquired no title whatever to the property. A qualified right, arising from the custody, was all the right he had; and when he parted with the custody, he parted also with the right. 6 *Bac. Abr.* 563. (*Gwil.* ed.) *Smith* v. *Milles*, 1 *Term Rep.* 480. 1 *Chitt. Plead.* 48.

3. That if the cattle had remained in the custody of the plaintiff, he could not have maintained trespass, because he was merely the servant of the officer, who had only a qualified property, the general property remaining in the debtor. The officer should have brought the action. *Ludden* v. *Leavitt*, 9 *Mass. Rep.* 104. *Warren* v. *Leland*, 9 *Mass. Rep.* 265. *Barker* & al. v. *Miller*, 6 *Johns. Rep.* 196.

4. That the charge to the jury was incorrect, in as much as it submitted to them a question of *law*, which it was the duty of the court to decide. The facts admitted were sufficient to make an end of the case, if the court had determined the question of law arising upon those facts. Besides, the case was submitted upon the isolated fact of a removal of the property. But it did not turn upon this fact alone. The court ought, at least, to have submitted the whole transaction, as evidence of fraud.

*Lanman* and *Brown*, contra, contended, 1. That the receipt was properly admitted. It was, when offered in evidence, in its primitive state : the intermediate alterations, with the consent of all parties, could not affect its validity. Neither the addition of another name, nor the removal of it, was of any moment to the defendant: it concerned the parties to the instrument only.

2. That the plaintiff had such a possession as enabled him to bring trespass. The delivery, by the officer, of property attached, to a receipt-man, is sanctioned both by statute, (*a*) by long established custom. The receipt-man had a special property in the goods thus delivered to him. This special property was not divested, by his employing a servant to take care of the goods : he still had possession by his servant. No property vested in the servant; and no action could be sustained by him.

3. That the defendant has no reason to complain of the charge. The court distinctly recognized the principle, that a removal of the property was necessary; and submitted to the jury the question of fact, whether there had been such a removal. The removal contemplated by the charge must be taken to be a *substantial*, and not merely a *sham* removal; and such a removal the jury have found. Is not this sufficient? Should the court have told the jury, that notwithstanding such removal, the attachment was, in contemplation of law, fraudulent and void? To this it may be answered, in the first place, that the question of fraud in the attachment of property, is not a question of *law*, but of *fact*. Secondly, there were no facts in the case tending to shew fraud, except such as were involved in the fact of removal; and were, consequently, with that fact, submitted to the jury. The jury have passed upon the *quo animo*.

HOSMER, Ch. J. The receipt given by the plaintiff to *Haley*, was legally admitted in evidence. At the time of levying on the property, with *Stoddard's* attachment, he was the only receipt-man, and his right of action then arising cannot be defeated by matter *ex post facto*. Besides, the taking off the name of *Hinckley* from the receipt, by consent of all the

*New-London,*
*October,*
*1819.*

Burrows
*v.*
Stoddard.

(*a*) Vid. 1 *Stat Conn. tit.* 146. *c.* 1. *s.* 20.

parties to it, did not invalidate the instrument. It remained in force against the plaintiff, as if no such fact had existed.

The plaintiff, to whom the property taken was delivered, had a right to maintain an action of trespass for the violation of his possession ; more especially, as he was bailee, and answerable for it to the person from whom he received it. The actual custody, by the son of *Hempstead*, was merely as having the charge or oversight of it ; (1 *Hawk. P. C.* 90. *sect.* 6. *Williams* v. *Lewis*, 3 *Day* 498.) the constructive possession being in the plaintiff, and the injury consisting in a violation of his right.

It appears, that on the 25th of *December*, 1817, the plaintiff attached the property in question, on a suit against *William Hempstead ;* and that *Haley*, the officer, drove the stock attached from the farm occupied by *Hempstead* and one *Hinckley*, into the street, and delivered it to the plaintiff, who gave his receipt for it, and committed the care and oversight of it to *John Hempstead*, the minor son of *William ;* that *John* returned it to the farm, where it remained in the same visible condition as it was in before the attachment. On the 27th of the same *December*, the defendant claimed, that he was a creditor of *William Hempstead*, and attached the property, while on the farm, in the use and occupation of said *Hempstead* and *Hinckley*, and took it from their possession ; for which taking the plaintiff's suit is brought. To these facts the attention of the jury should have been directed, with the instruction, that they were a badge of fraud, and even conclusive evidence of it, unless explained, by the most satisfactory reasons. *Sturtevant* & al. v. *Ballard*, 9 *Johns. Rep.* 337. 340. *Ryall* v. *Rowles*, 1 *Ves.* 348. 360. No one legitimate object of an attachment of property can be fulfilled, by permitting it to remain in the occupation of the debtor ; and this extraordinary exception to the usual course of conduct, in such cases, is strong presumptive evidence, that the purpose was not to secure a debt, but to protect the property of the debtor from his creditors. *Rice* v. *Serjeant*, 7 *Mod.* 37. *Barnes* & al. v. *Billington* & al. 4 *Day* 81. 85, 6. n. *Chancellor* v. *Phillips* & al. 4 *Dall.* 213. *The United States* v. *Conyngham* & al. 4 *Dall.* 358. It is no sufficient answer, that the possession was delivered to *John Hempstead*, the minor son of *William ;* who permitted his father to take the property into his occupation. It might reasonably be anticipated, that this fact would exist ;

and that the *manner* of returning the property to *William Hempstead* was to mask the real nature of the transaction. The possession of the receipt-man should not merely have been colourable, but actual, and *bona fide*. It is mere mockery, said Lord *Ellenborough*, in *Wordall* v. *Smith* & al. 1 *Campb.* 333, 4. to put in another person to take possession jointly with the owner. There must be a possession, not concurrent, but exclusive. See also *Paget* & al. v. *Perchard*, 1 *Esp. Rep.* 205.

Instead of putting the essential point above mentioned to the jury, the court informed them, that if they found the property had been removed from the possession of the debtor, they must find for the plaintiff. This enquiry could be of no imaginable importance, except in relation to the question whether the possession had ever been lawfully transmitted to the receipt-man. It cannot seriously be pretended, that the removal of property a rod, and then returning it to the debtor, would repel the presumption of fraud arising from the possession. The material question between the parties, was, by the charge, withdrawn from the consideration of the jury; and for this reason, there must be a new trial of the cause.

PETERS, CHAPMAN and BRAINARD, Js. were of the same opinion.

BRISTOL, J. concurred, as to the admissibility of the receipt, and as to the plaintiff's right of action; but he thought the charge was correct, inasmuch as it submitted the only material point in controversy between the parties. The jury could not have understood, from the language of the charge, that a removal of the property merely *colourable*, was sufficient.

New trial to be granted.