## Silas B. Sibley *vs.* Joseph Story.

Chittenden,
. *January,*
1836.

Sibley
*vs.*
Story.

If an officer attach property and bail it to a receipt man, who refuses to rede-liver it on request, he may sustain trover against such receipt man.

This was an action of trover for a horse. Plea, general issue.

To support the issue on his part, the plaintiff introduced the following receipt:

"Received, Milton July 30th, 1833, of S. B. Sibley, constable of Milton, one grey stud colt, four years old, valued at one hundred dollars, attached at the suit of Francis Roe vs. Silas Smith, jr., demanding in damages fifty dollars which 1 promise to deliver S. B. Sibley or bearer on demand, or pay said debt and all costs on account of not delivering said property."

(Signed) JOSEPH STORY."

And on the back of the receipt was the following endorsement:

"I hereby acknowledge a demand of the property named in this receipt made by Silas B. Sibley, constable of Milton, 20th Sept. 1834."

(Signed) JOSEPH STORY."

The plaintiff also introduced the record of the original attachment, judgment and execution, in favor of Roe vs. Smith, which showed the judgment to be regular, and the execution issued in due season to hold the property. The defendant contended that the action of trover could not be sustained, that plaintiff's cause of action was substantially a contract made in the alternative, and the action should have been on the contract. It was admitted that the defendant refused to redeliver the property upon the demand of the plaintiff, claiming the horse by purchase of said Smith previous to the attachment. The objections were not sustained by the court, and judgment was rendered for plaintiff. To which defendant excepted. Exceptions allowed and the case ordered to supreme court for revision.

*Mr. Maeck for defendant.*—On the evidence, as it appears from the bill of exceptions, this action cannot be maintained. In the case of a tavern keeper, tailor, wharfinger, agister of cattle, and common carrier, it is not to be denied that if they convert the articles, delivered them to keep merely, to their own use, trover can be sustained. But in all these cases it will be observed the contract in point of law and fact invests the receiver with no other power over the goods except to keep and redeliver to the owner, and consequently a disposition of them is a breach of duty and direct tort.

CHITTENDEN,
January,
1836.

Sibley
vs.
Story.

But when a power of sale is either expressly given by the contract of the parties or can reasonably be inferred from the nature of the transaction, trover cannnot be sustained for the articles, though the power is not strictly pursued.

It cannot be sustained against a broker or factor who has positive orders not to sell under a certain price, and sells below the price; but the remedy is an action on the case.—3 Taunton 117, *Deufresne* vs. *Hutchinson.*

If the receipt had stopped at the word "demand," the action could not have been sustained. By the custom and usage of the country from the fact that a sheriff has delivered over property to a receiptor, a power of disposition is implied. The receipt is substituted for a replevin bond and if the goods had been replevied and not redelivered to the officer, it cannot be pretended he or any one else could maintain trover for them. The receipt is a mere indemnity to the sheriff, and if the property is not redelivered, the officer looks to the receiptors, and it is not necessary for him to show the receiptors have actually received the property.

But when the receipt contains the stipulations the one in question does, it is absurd to contend the officer may maintain trover if the property is not redelivered. A power of sale is expressly given on the face of it. The undertaking of the defendant is, that he will deliver the property or pay the debt and costs. It was a conditional contract in the outset that the defendant. might treat this property as his own if he pleased, and the condition was not that the debtor would pay for the property itself at its actual value, but that he would pay the debt and costs which might be recovered against Smith, if he did not return it. The paying the debt was not a condition precedent to the power of disposition, but it was a consequence of exercising the power.

Whether the officer had the right of so disposing of the property cannot be material as regards the parties. If he committed a tort as respects the debtor, by so disposing, it cannot convert a contract between him and the defendant into a tort. Such receipts are private contracts between the officer and receiptor.—*Clarke* vs. *Clough*, 3 Greenleaf 357.

*Mr. Hill for plaintiff.*—It is well settled that an officer who has attached goods on mesne process, may maintain trover against any one who shall meddle with them unlawfully.—3 Dane Ab. 189; 1 Mod. 31-2; Saunder's R. 47; 1 Pick. R. 395.

2. An officer who attaches hay, &c. and leaves a copy with

Chittenden
January,
1836.

Sibley
vs.
Story.

the town clerk, can maintain trover if any one converts it.—4 Vt. R. 76.

3. The very denial of goods to him that has a right to demand them, is an actual conversion.—Hall C. J. 6 Mod. 212.

4. When goods are lent or delivered to another to keep, and he refuses to deliver them on demand, trespass does not lie, but the proper remedy is trover.—1 Chit. Pleadings, 157 ; Sir Thos. Ray, R. 472 ; 2 Saunder's R. 47; Bull, N. P. 44; 2 Phil. Ev. 148, and note.

5. Where an agent has rendered himself liable for a non-feasance or mis-feasance, the principal may, at his election, have an action of assumpsit or case.—1 Livermore on agency, 375; Cites 4 Bos. and Pul. 43 ; 6 East. 333 ; 3 East. 62.

6. An action of trover will not lie for a bare omission, but there must be some positive act of the defendant to constitute a conversion.—1 Livermore on agency, 385 ; Cites Salk. 655; 5 Burr, 2825; Bull N. P. 45; Taunt. 841 ; Vt. 223.

7. Trover will lie against a common carrier for non-feasance or mis-feasance.—2 Wils. 319. Also for delivering goods to a wrong person.—1 Livermore on agency, 379; Peake's N. P. R. 49. Also against a wharfinger who refuses to deliver goods where h-- has no leave.—3 Danes Ab. 208.

8. The supreme court of this state have decided that a sheriff does not part with the right of possession to property which he has attached and put into a man's hands and taken a receipt for it. 1 Daniel Chipman's R. 51 ; 4 Vt. R. 605 ; 5 Vt. 268. There it follows as a matter of course, that if Sibley could have gone and taken this horse the next day after taking the receipt for him, (for the courts say he had a right to take him any time without the consent of the receipt man. 4 Vt. R. 607,) he could then make a demand and a refusal would give to him the action of trover according to the reason given.—3 East. 62; 1 Cowen R. 322.

9. It never was the intention of the plaintiff to part with the property, by taking the receipt, for it is expressly agreed to redeliver it on demand to Sibley or bearer.

10. But when the demand was made and defendant refused to deliver the property or to pay for it, there was a conversion, and the plaintiff had his election to provde in tort or assumpsit.

11. It is no disadvantage to the defendant for the plaintiff to commence his action in trover, but it is an advantage. He can now show that the horse was his, (which he attempted to do) which he could not do, had the action been brought on the

3

CHITTENDEN,
January,
1836.

Sibley
vs.
Story.

receipt. He might show in this form of action that the affair took no property into his possession.

12. It takes away from the defendant no. defence that he might make in assumpsit. In fact he can show every thing under the plea of not guilty.—3 Dane Ab. 205.

13. It is much the most convenient mode of practice and ought to be sustained by the court, if it does not give to the plaintiff advantages which he would not have in assumpsit and take away advantages from the defendant.

The opinion of the court was delivered by

REDFIELD, J.—The only question arising upon the bill of exceptions is, whether trover be the appropriate remedy in this case. There can be no doubt assumpsit will lie, upon such a receipt in the name of a deputy sheriff even, when so expressed in the receipt. The bailing of property attached on *mesne* process to a receipt man, so common in our practice, is not so far an official act of the attaching officer, that he is bound to make the bailment on request of the debtor; and still it is so far official in its character, that the sheriff may claim to have made the bailment through his deputy, and may maintain an action for the non delivery on request, in his own name.—*Davis* vs. *Miller*, 1 Vt. Reps. 9; *Spencer* vs. *Williams et al.* 2 Vt. R. 209. There can be as little doubt that the sheriff or his deputy or any other officer, making an attachment, whether they have the actual custody, or have bailed the property to a receipt man, or have only a constructive possession by operation of law, as is the case with those articles of personal property not required by our statute to be removed, in order to constitute an attachment, e. g. hay, grain, &c., (*Lowry* vs. *Walker*, 4 Vt. R. 76; same case reconsidered, 5 Vt. 181) may sustain trover against any one guilty of converting the property.

It is indeed a well settled rule of common law, that a mere depositary of goods is liable, in trover, for any abuse or even use of them, and equally for refusal to deliver the thing bailed to the bailor on request.

But a bailee for use is not liable in trover for a mere abuse of the chattel, but the appropriate remedy is trespass on the case or assumpsit.—1 Saund. 47, No. 1 ; 1 Ch. R. 650. But in this case if he refuse to redeliver the thing bailed or put it to another and different use from that for which it was bailed, he is guilty of a conversion and liable in trover. A nice distinction is taken in the books between *mis*-feasance and *non*-feasance by the bailee. In the

former case the bailor may, at his election, bring assumpsit case or tro-
ver, but in the latter case trover will not lie. After the bailment
is determined either by its own limitation or the act of the bailee,
the law considers the several species of bailment as resulting in a
naked deposit, and trover will always lie after demand and refusal;
and trespass even, when the bailment is determined by the bailee
destroying the subject of the bailment. These principles are too
well settled and too familiar to require discussion.—Story on B.
74,—84, 93, 1 Chitty on Pl.

In this case, if the plaintiff had merely delivered, the property
to the defendant for safe keeping, it would hardly be contended he
could not sustain trover against him for converting it to his own use.

And the common receipt taken in these cases is not intended to
vary the obligation resulting from the relation, and in fact does not.
In such case it has always been held here that the officer might
bring trespass or trover against a stranger who wrongfully interfer-
ed with the property, while in the possession of the receipt
man.—*Bedlam, executor, vs. Tucker*, 1 Pickering 395; *Sudden
vs. Lovitt, ubi infra*; *Gibbs vs. Chase*, 10 Mass. Rep. 104;
*Gates vs. Gates*, 15 Mass. 310; *Brownel vs. Manchester*, 1
Pick. 389.

It has been decided in Massachusetts that the receipt man is a
mere servant of the attaching officer and has no such interest as
will enable him to maintain an action of trespass or trover against a
mere stranger.—*Waterman vs. Robinson*, 5 Mass. 303; *Sudden
vs. Lovitt*, 9 Mass. 104; Ib. 265; 14 Mass. 217, *Commonwealth
vs. Morse.*

But although it be conceded that the doctrine (*Barrows vs.
Stoddard*, 3 Conn. 160) that the receipt man may bring trover or
trespass for any wrong done by a stranger to the property while in
his possession, or that of his servant, is more in analogy to the
settled principles of the right and duties of bailees in other cases,
which is undoubtedly true, still, it must be admitted that the cases
in Connecticut, (*Burrows vs. Stoddard*,) and also in New York,
(*Mitchell vs. Hinman*, 8 Wendell ——) and especially the Mass.
cases cited above treat the possession of the receipt man as being
the possession of the officer.

It is well settled that the mere depositary of goods has no prop-
erty in them.—*Hartrop vs. Hoare*, 3 Atk. 49; Story on bail-
ments, 72, 73; *Isaac vs. Clarke*; 2 Bulstrode R. 306, 311.

But it is equally clear that the bailee, under such circumstances,
may maintain trover against a mere stranger.—Same cases and

Booth vs. Wilson, 1 B. and Ald. 59; Sutton vs. Brick, 2 Taunt. 381.

The receipt man has a mere naked custody and no property in the thing receipted, any more than any other depositary.—Norton vs. Rofle, 8 Cowen 137.

The officer has a right to resume the actual custody at any time. Pierson vs. Hovey et al. 1 D. Chip. 51; Beach vs. Abbott & Blodget, 4 Vt R. 605; Rood vs. Scott et al. 5 Vt. R. 263; Philips vs. Bridge, 11 Mass. 242.

In short, the receipt man is at most the temporary bailee of the property, with the right to use it by consent of the debtor, but liable at any time to be called to account and guilty of converting the property by any abuse or wrongful use or refusal to deliver on request. These principles are too well settled by repeated adjudications, sub silentio indeed, and a uniform course of practice for too long a time to be now brought in question.—Bedlam vs. Tucker; Lockwood vs. Bull, 1 Cowen 322. In New York the form of action is generally trover. It has been brought in this state as often, it is believed, as any other form of action in cases of this character. The same is true of Connecticut and Massachusetts. And we here decide that trover is the appropriate remedy.

But it is attempted to liken this to the case of a bailment with a power of sale. And this is attempted to be inferred from the stipulation of defendant, being in the alternative, and not fixing the value of the property as the measure of liability, but the amount of the debt and costs.

This does not vary the case. In no sense can this be construed a "power of sale." The plaintiff could confer no such power. If he could have done, it is in vain to infer one from the terms of the contract. No such power is expressed or was intended to be, so that any analogy, which was attempted to be shown between this and the case of Sergeant vs. Blunt, 16 Johns. 74, or 3 Taunt. 117 Dufresne vs. Hutchinson, where it was held trover, will not lie against an agent for selling goods intrusted to him for sale, below the price at which he was required to sell by his instructions, wholly fails.

It is believed that this receipt is in the form in which many years since it was most common to express the liability. It is intended to express, in definite terms, the extent of defendant's liability to plaintiff. It was natural defendant should wish it so draughted. It was but reasonable plaintiff should consent to such a limitation, as long as the defendant was the friend of the debtor,

and the property would doubtless go immediately into his posses-
sion, so that plaintiff would hardly be called upon to take any
indemnity against a possible liability over to him. There being
no error in the proceedings below.

    Judgment is affirmed.