H. H. RUSSELL, Appellant, v. SAMUEL C. MAJOR *et al.*,
Respondents.

### Kansas City Court of Appeals, February 6, 1888.

1. ATTACHMENT—EXECUTION—LEVY—CONSTRUCTION OF SECTION 420, REVISED STATUTES.—The statute of this state on the levy of attachments is stricter than that of many of the states. If the property is accessible, it must not only be taken, but it must be kept in the custody of the officer ; and the custody must be exclusive of·that of the owner.

2. ——— POSSESSION BY BAILEE—ABANDONMENT OF AND ITS EFFECT—CASE ADJUDGED.—Where, as in this case, the bailee, in whose possession the property levied upon is left by the officer, abandoned the possession of the property, leaving no one in charge of it, and remaining thus for two weeks or more, the attachment must be considered as released.

3. ——— ——— RIGHTS OF THIRD PARTIES.—In this case the levy is being asserted, not against the rights of the defendant in the writ, but against third parties. When such is the fact greater ,strictness is required in the levy, than if the rights of the defendant were alone concerned.

APPEAL from Henry Circuit Court, HON. JAS. B. GANTT, Judge.

*Affirmed.*

The case and facts are stated in the opinion of the court.

WILLIAM S. SHIRK and W. E. SHAW, for the appellant.

I. The court committed error in sustaining defendants' demurrer to the plaintiff's evidence. The plaintiff's evidence showed : (1) That plaintiff was sheriff of Johnson county. (2) That as such sheriff, he had levied on the property in dispute, under a ·legal writ of attachment against one G. T. Williamson. (3) That he took possession under his levy. (4) That defendants

took them out of his possession, without his knowledge or consent. (5) That defendants had possession of the hogs when the writ of replevin herein was sued out and served. (6) That at the time plaintiff levied on the hogs, under the attachment against G. T. Williamson, they were the property of said Williamson, and in his possession. These facts made out a *prima-facie* case for plaintiff, and entitled him to recover, until the defendants showed a better title or right of possession.

II. The sheriff, by virtue of his levy on the hogs, had such an interest therein as will uphold an action of replevin. *Duncan v. McKee*, 23 Ind. 447 ; *Martin v. Watson*, 8 Wis. 315 ; *Polite v. Jefferson*, 5 Harr. (Del.) 388 ; *Pugh v. Calaway*, 10 Ohio St. 488. We presume this point will not be controverted, hence will not multiply authorities.

III. The levy of the sheriff was good, and the possession taken by him under the levy was sufficient. He went to where the property was—it was within his view, and subject to his control. He declared his levy to the bystanders. He placed it in charge of one whom he appointed to keep it for him, and who agreed to keep it for him, and let no one have it except upon an order from him. The levy was, therefore, good under our statute. Rev. Stat., 1879, sec. 2357 ; *Id*. sec. 420, subdiv. 4 ; Freeman on Ex. [1 Ed.] secs. 260, 261, and 262, and authorities cited in the various notes, which completely cover this case ; *Douglass v. Orr*, 58 Mo. 573 ; *Thompson v. Foershel*, 10 Mo. App. 291.

IV. The description of the hogs was sufficiently definite, especially when taken in connection with the fact, that the levy was upon all of the defendants' hogs, and that possession was taken at the time. They were described in the only way it was practicable to describe them. They were described in the levy as the property of Williamson—as one hundred head, more or less, of stock hogs, on the G. T. Williamson farm. The sheriff meant to levy on all of Williamson's hogs, and actually did levy on some that belonged to others. It was not a

mere "pen and ink levy," nor was it a case of levying on fifty head of hogs, running or being at a certain place, and the property of a certain man, when such person had a hundred hogs of the same kind and at the same place. In such case it might have been necessary to drive out and separate the fifty levied upon, from the other fifty. But here there were less than the number levied upon.

V. We cannot believe that this court will permit the merest technicality to be invoked as against an officer, endeavoring to do his duty as best he could under the circumstances, in favor of mere trespassers. For if this judgment be affirmed, the plaintiff, as sheriff, must lose the value of these hogs, and put their value into the pockets of the defendants, who never even made a pretense of the ownership, or right to the possession of them, except under some shipping arrangement with an outside party to this whole transaction.

M. A. FYKE and J. W. BRANNUM, for the respondents.

I. The court did not err in sustaining the demurrer to the plaintiff's evidence. There was no valid levy for two reasons: (1) The statute, section 420, subdivision 4, provides, "when goods and chattels, money, or evidences of debt, are to be attached, the officer shall take the same and keep them in his custody, if accessible ; and, if not accessible, he shall declare to the person in possession thereof that he attaches the same in his hands, and summon such person as garnishee." The custody of the officer, to constitute a valid levy, must be such a custody as will enable the officer to retain and assert his power and control over the property, so that it cannot probably be withdrawn, or taken by another, without his knowledge. Drake on Attachments [6 Ed.] secs. 255, 256 ; *Douglass v. Orr*, 58 Mo. 573.

II. If the officer leaves the property attached in

the possession of the defendant no lien attaches.    *Gower v. Stevens*, 19 Me. 92 ; *Flanagan v. Wood*, 33 Vt. 332 ; *Dunklee v. Fales*, 5 N. H. 527 ; *Pomeroy v. Kingsley*, 1 Tyler, 294 ; *Taintor v. Williams*, 7 Conn. 271 ; *Baker v. Warren*, 6 Gray, 527 ; *Bickler v. Kendall*, 24 N. W. Rep. 518.

III.    The custody of the officer must be continuous ; if he, or his bailee, abandon the property the lien is lost. Drake on Attachments [6 Ed.] sec. 292*a ; Carrington v. Smith*, 8 Pick. 419 ; *Weston v. Dorr*, 25 Me. 176 ; *Burrus v. Stoddard*, 3 Conn. 160 ; *Crawford v. Newell*, 23 Iowa, 453 ; *Littleton v. Wyman*, 28 N. W. Rep. 582 ; *Williams v. Cheseborough*, 4 Conn. 356.

IV.    The hogs were not described with sufficient certainty.    "One hundred head, more or less, of stock hogs, on the G. T. Williamson farm," is virtually no description, especially in view of the fact, that Chappell, and B. F. Williamson, owned a portion of the hogs running after the cattle.    *Stonebraker v. Ford*, 81 Mo. 532.    If separate owners mingle their property together, it is the duty of an officer who wishes to make an attachment on a writ against one of them, to ascertain, if he can, what portion of the goods belongs to each ; and not to attach the whole of them without making the inquiry.    *Shumway v. Rutter*, 8 Pick. 443 ; *Carlton v. Davis*, 8 Allen, 94 ; *Lewis v. Whittenmore*, 5 N. H. 364 ; *Wilson v. Lane*, 33 N. H. 466.

Ellison, J.—Plaintiff brought this action of replevin for ninety-six head of hogs.    At the close of his testimony a demurrer was interposed and sustained, and he appeals.

It appears that the Third National Bank of Sedalia brought suit by attachment against one G. T. Williamson, who had absconded.    The attachment was placed in the hands of plaintiff, as sheriff of Johnson county. Williamson was feeding a lot of cattle for Shelton and Ball, defendants in this suit, under some kind of an arrangement which was not developed by the testimony.

The hogs in suit were "running after the cattle." Plaintiff levied, or attempted to levy, this attachment on these hogs on December 21, 1885. The validity of this levy is the sole question in the case. It was made in the following manner: The sheriff went to Williamson's farm, where he found the hogs running in the feed-lot and in the adjoining fields. Williamson had absconded, leaving his hired hand in charge of the cattle and hogs. The sheriff found this hand and another man at the farm, and he told them he had levied on the hogs, and put them in charge of the hired man, who already had them in charge for Williamson, with directions to feed them and keep them for him. He also endorsed on the writ that he levied on "one hundred and nine head of two and three-year-old steers of various colors, located on the Joseph Jones farm, in the southeastern part of said county. One hundred head, more or less, of stock hogs on the G. T. Williamson farm, in the same neighborhood." The sheriff did not count the hogs, as "they were too much scattered; some were in the feed-lot, some about the hay-stacks, some in the yard, and some in a field of forty or fifty acres. He did not see all of them, but thought a half-dozen was as many as he failed to see. He was satisfied there was a hundred head." He took no receipt from the hired man, nor did he leave any evidence of his levy, except placing them in charge of the hired man, as he had found them. He expected them to continue to run with the cattle till he could make other arrangements. The hired man left the country in four or five days after the levy. His leaving was unknown to the sheriff till a week or more afterwards, when he, the sheriff, wrote a letter to a man living near, to take charge of the hogs, but to allow them to remain where they were. About the time the hired man ran off, defendants, Shelton and Ball, took charge of the cattle and hogs, and fed them till they drove them off to the railway for shipment, when they were replevied in this

action. There was no evidence to show that Shelton and Ball knew of the alleged levy.

It is said by Freeman, in his work on Executions, section 260, that in determining whether a given state of facts establishes a valid levy, we must consider: "1. The statute of the particular state in which the levy is drawn in question. 2. The person against whose rights the levy is sought to be asserted; and 3, the character of the property upon which the levy was attempted to be made."

Our statute on the levy of attachments is stricter than that of many of the states. It is as follows (sec. 420): "IV. When goods and chattels, money, or evidences of debt, are to be attached, the officer shall take the same and keep them in his custody, if accessible; and if not accessible, he shall declare to the person in possession thereof that he attaches the same in his hands, and summon such person as garnishee." If the property is accessible, it must not only be taken, but it must be kept in the custody of the officer. It is evident from this statute that the custody of the officer must be exclusive of that of the owner. The property must be taken and kept from him. "It is of especial importance that an officer should not leave attached property in the possession of the defendant, unless authorized thereto by some statutory provision." Drake on Attachment, sec. 292a, and authorities cited; also, Freeman on Ex., sec. 261. I regard the property in this case as having been left in the possession of the defendant. It was left with his servant who already had it in charge. The servant's possession was that of the master. It is true the sheriff might well have left the property in charge of his own agent or servant; but it certainly would be against the spirit of the law to say he may make of the defendant, or of the defendant's servant, who continues in defendant's employ, an agent or servant for himself; the object and intent of the law would thus be thwarted. *Burrows v. Stoddard*, 3 Conn.

160; *Flanagan v. Wood*, 33 Vt. 332; *Dunkler v. Fales*, 5 N. H. 527; *Tainter v. Williams*, 7 Conn. 271.

But if it should be conceded that the sheriff might leave the property in the hands of the defendant, or the defendant's servant, or make a bailee of them, a difficulty would yet prevent a recovery on this action. The bailee in this case, whose possession is contended to be that of the sheriff, abandoned the possession of the property, leaving no one in charge of them, and thus the property remained for some two weeks. In such case we must hold the attachment released.

In this case the levy is being asserted, not against the rights of the defendant in the writ, but against third parties; when such is the fact greater strictness is required in the levy than if the rights of the defendant were alone concerned. Freeman on Ex., sec. 260; Drake on Attachments, sec. 255a.

Our conclusion is, the judgment should be affirmed, and it is so ordered. Hall, J., concurs.

PHILIPS, P. J., CONCURRING. — I concur in the result of the foregoing opinion, on the ground that the agent or bailee placed in charge of the property by the sheriff, abandoned the possession, and there had been no public resumption of dominion over it by the sheriff when defendants drove it away. *Heard v. Fairbanks*, 5 Met. 113.